IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH DIVISION

| | | |
|---|---|---|
| CATHASAIGH NICOLE MOLEK,<br><br>Plaintiff,<br><br>vs.<br><br>FRANK BISIGNANO, COMMISSIONER OF SOCIAL SECURITY;<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | 2:25-CV-01214-CBB |

**MEMORANDUM OPINION[1]**
**ON MOTION FOR SUMMARY JUDGMENT ECF No. 16**

**Christopher B. Brown, United States Magistrate Judge**

## I. Introduction

Plaintiff Cathasaigh Nicole Molek ("Molek") filed her claim for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 401-434 (the "Act") on September 24, 2019. Tr. at 486. Molek claims she became disabled beginning July 15, 1987 due to, inter alia, inflammatory arthritis, bilateral carpal tunnel syndrome, bilateral elbow tendinitis, idiopathic hypotension, social anxiety disorder, major depressive disorder, adjustment disorder and autism spectrum disorder. ECF No. 7-2 at 17, 19.

[1] All parties have consented to jurisdiction before a United States Magistrate Judge; therefore the Court has the authority to decide dispositive motions, and to enter final judgment. *See* 28 U.S.C. § 636, *et seq*.

Molek's claims were initially denied, and she sought reconsideration before an Administrative Law Judge ("ALJ") who denied her claim. *Id.* at 15. The Appeals Council remanded the ALJ's decision to consider the medical opinion evidence of record. *Id.* After several extensions, a supplemental hearing was held on September 13, 2024. *Id.* at 17. On September 26, 2024, the ALJ denied Molek's claim. *Id.* at 13. The Appeals Council declined to review the ALJ's decision and Molek filed a timely appeal with this Court. *Id.* at 15.

Presently pending before the Court is Molek's motion for summary judgment. ECF No. 16. The motion is fully briefed and ripe for consideration. ECF Nos. 17, 18.

For the reasons that follow, Molek's motion for summary judgment is denied, and the Commissioner's decision to deny benefits is affirmed.

## II. Factual Background

The following summary is limited to information that is relevant to the current appeal.

Molek has no past relevant work and alleges she became disabled in 2019 and was less than 50 years old when she applied for disability benefits. ECF No. 17 at 7. Molek has been diagnosed with a number of impairments including, *inter alia*: inflammatory arthritis, bilateral carpal tunnel syndrome, bilateral elbow tendinitis, idiopathic hypotension, social anxiety disorder, major depressive disorder, an adjustment disorder, autism spectrum disorder, polycystic ovary syndrome, migraine headaches, asthma, cervicalgia, vitamin D deficiency, chronic fatigue,

temporomandibular joint dysfunction, a sore tongue and allergies. ECF No. 7-2 at 19.

Molek sought treatment from several medical professionals for these physical and mental health impairments. Among other medical testimony, there are several key medical opinions and evaluations in the present record related to Molek's impairments:

**Holly Gastgeb, Ph.D.: Treating Medical Professional**

On April 25, 2018, Holly Gastgeb, Ph.D. conducted a psychological assessment on Molek. ECF No. 7-15 at 479-489. Molek was referred due to concerns with anxiety, depression, difficulty completing tasks, social communication difficulties, difficulty with change, intense interests, repetitive movements, sensory sensitivity and concerns regarding possible Autism Spectrum Disorder ("ASD"). *Id.* Molek tested as highly intelligent, scored as severe to moderate ranges for anxiety, showed borderline interpersonal sensitivity and depression symptoms, clinically significant somatization, obsessive-compulsive, anxiety, hostility and phobic anxiety symptoms. *Id.* Molek also tested as meeting the diagnostic criteria for ASD without intellectual or language impairment and Dr. Gastgeb noted Molek may benefit from outpatient therapy, relaxation techniques like yoga, social skills groups for adults with ASD and consulting with a doctor regarding medication to address anxiety and depression. Id.

**State Agency Consultant: Shelly Ross, Ph.D.**

In January 2020, Shelly Ross, Ph.D., a state agency medical consultant reviewed Molek's medical records and completed a mental residual functional capacity assessment. ECF No. 7-3 at 11-14. Dr. Ross found, *inter alia*, that Molek was markedly limited in her ability to respond appropriately to changes in the work setting. *Id*. at 13. Dr. Ross opined that it was very unlikely that Molek would be able to work full time in the work setting and she would be unable to meet basic mental demands to complete one and two step tasks on a sustained basis. *Id*.

**Douglas Schiller, Ph.D.**

In November 2020, Douglas Schiller, Ph.D. completed a mental residual functional capacity assessment. ECF No. 7-3 at 33-38. Dr. Schiller found, *inter alia*, that Molek was moderately limited in her ability to respond appropriately to changes in the work setting and this would not preclude her from performing routine and non-complex tasks and activities. *Id*. at 37.

**Chantal Deines, Psy.D.**

In January 2020, Chantal Deines, Psy.D. conducted a mental status evaluation and opined that Molek had, *inter alia*, moderate limitations in her ability to respond appropriately to usual work situations and to changes in a routine work setting. ECF No. 7-7 at 790.

**Sari Fleischman, Psy.D.**

In October 2020, Sari Fleischman, Psy.D. conducted a mental status evaluation and opined that Molek had, *inter alia*, marked limitations in her ability to respond appropriately to changes in a routine work setting. ECF No. 7-14 at 32.

**Anne Miller, Ph.D.**

In January 2023, Anne Miller, Ph.D. conducted a mental status evaluation and opined that Molek had, inter alia, moderate problems responding appropriately to change and adapting to workplace changes. ECF No. 7-14 at 218-19.

**Arcadio Agudelo-Hernandez, M.D. and Mary Ellen Wyszomierski, M.D.**

State Agency Consultations Arcadio Agudelo-Hernandez, M.D. and Mary Ellen Wyszomierski, M.D. opined that Molek would be limited to light exertion with modest postural, manipulative and environmental restrictions. ECF No. 7-3 at 8-10; ECF No. 7-3 at 29-31.

**Alexandra Smith-Demain, M.D.**

Alexandra Smith-Demain, M.D. performed a consultative medical examination in January 2020 and opined that Molek would be capable of light lifting and carrying, albeit with decreased standing and walking and additional manipulative, postural and environmental restrictions. ECF No. 7-2 at 27.

## III. The ALJ's Decision

The summary of the ALJ's decision is limited to information relevant to the current appeal. In her decision, the ALJ used the five-step sequential evaluation process as required.

<u>Step One:</u>

At step one– whether the claimant is engaging in substantial gainful activity – the ALJ found Molek met the insured status requirements of the Social Security

Act through August 29, 2019 and had not engaged in substantial gainful activity since the application date. ECF No. 7-2 at 19.

Steps Two and Three:

At steps two and three of the sequential analysis – whether the claimant has medically determinable impairments that are severe and whether the claimant's impairments are so severe to meet or medically equal the criteria set forth in the regulations – the ALJ considered Molek's impairments and their severity. The ALJ found Molek had eight impairments which qualified as severe: inflammatory arthritis, bilateral carpal tunnel syndrome, bilateral elbow tendinitis, idiopathic hypotension, social anxiety disorder, major depressive disorder, an adjustment disorder, and autism spectrum disorder. *Id*. at 19. Although documented, the ALJ found Molek's polycystic ovary syndrome, migraine headaches, asthma, cervicalgia and vitamin D deficiency to be not severe impairments as they did not more than minimally limit her ability to perform basic work activities. *Id*. The ALJ also found Molek's chronic fatigue, temporomandibular joint dysfunction, a sore tongue and allergies not medically determinable impairments due to a lack of objective evidence. *Id*.

As for Molek's physical impairments, the ALJ found they did not meet or medically equal the severity of criteria of Listings 11.14, 1.18, or 14.09 when considered alone or in combination with the other impairments. *Id*. at 20, 22.

As for Molek's mental impairments related to understanding, remembering or applying information, the ALJ found she had a moderate limitation. *Id*. at 20-21. As for Molek's mental impairment related to interacting with others, the ALJ found she had a moderate limitation. *Id*. at 21. As for Molek's mental impairments related to concentrating, persisting or maintaining pace, the ALJ found she has a moderate limitation. *Id*. As for Molek's mental impairments related to adapting or managing oneself, the ALJ found she has a moderate limitation. *Id*. at 21-22. The ALJ found that because Molek's mental impairments did not cause at least two "marked" limitations or one "extreme" limitation, the "paragraph B" criteria were not satisfied. *Id*. at 22. The ALJ also considered whether "paragraph C" criteria were satisfied and found no evidence to support such criteria. *Id*. The ALJ stated "[t]he limitations in the 'paragraph B' criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment of the areas of mental functioning. The following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis." *Id*. at 22.

Since the ALJ determined Molek's severe impairments did not meet the requirements of the Listings, the ALJ next determined Molek's residual functional capacity ("RFC"), meaning the limitations the impairments place on her ability to

perform gainful activity. *Id.* In doing so, the ALJ found some of the supplied medical opinion evidence persuasive.

Beginning with Arcadio Agudelo-Hernandez-MD, and Mary Ellen Wyszomierski, MD, the ALJ found their assessment mostly persuasive though not entirely consistent with the more extreme subjective complaints reported by Molek because the objective medical evidence showed Molek's physical symptoms remained generally stable with medication through the period at issue. ECF No 7-2 at 26.

With respect to Shelley Ross, PhD, the ALJ found her assessment unpersuasive because it grossly overstated the severity of Molek's mental limitations and was unsupported by the limited objective evidence available when she authored her opinion in January 2020. *Id*. at 27.

With respect to Douglas Schiller, PhD, the ALJ found his assessment consistent with and well-supported by the objective evidence showing that there were no contemporaneous mental health treatment records. *Id.*

With respect to Alexandra Smith-Demain, MD, the ALJ found her assessment somewhat persuasive because Dr. Smith-Demain overstated the severity of Molek's difficulties standing and walking. *Id.*

With respect to Chantal Deines, PsyD, the ALJ found her assessment mostly persuasive because it was well-supported by a contemporaneous mental status examination and consistent with the longitudinal treatment records. *Id.*

With respect to Sari Fleischman, PsyD, the ALJ found her assessment somewhat persuasive because it overstated Molek's difficulty responding appropriately to change. *Id.*

Finally, with respect to Anne Rene Miller, PhD, the ALJ found her assessment mostly persuasive because it was consistent with the behavioral health records and supported by the results of her own mental status examination. *Id.*

The ALJ assigned Molek the following RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. § 416.967(b) except:
>
> • She would be limited to frequent use of hand controls;
>
> • She would be limited to frequent handling and fingering, bilaterally;
>
> • She can occasionally climb ramps and stairs, but never ladders, ropes, or scaffolds;
>
> • She can frequently stoop, but only occasionally balance, kneel, and crouch;
>
> • She cannot crawl;
>
> • She cannot work at unprotected heights or around dangerous machinery;
>
> • She cannot operate a motor vehicle;
>
> • She can have no exposure to extreme temperatures;
>
> • She requires no more than a moderate noise level;
>
> • She would be limited to simple, routine, and repetitive tasks;
>
> • She cannot work at a production rate pace;
>
> • She can make simple work-related decisions; and
>
> • She can frequently interact with supervisors and can occasionally interact with coworkers, but she cannot interact with the public.

Id. at 22-23.

Step Four:

At step four – whether the claimant's impairments prevent her from performing her past relevant work – the ALJ found Molek did not have any past relevant work. *Id.* at 28.

Step Five:

At step five - whether the claimant can perform any other work which exists in the national economy – the ALJ took into consideration Molek's age, education, work experience and RFC, and relying on testimony from the Vocational Expert ("VE"), found there are jobs that exist in significant numbers in the national economy that Molek could perform, including a marker ((DOT# 209.587-034, SVP 2, light, 44,000 jobs), a photocopy machine operator (DOT# 207.685-014, SVP 2, light, 5,400 jobs), and a mail clerk (DOT# 209.687-026, SVP 2, light, 12,000 jobs). *Id.* at 28-29. The ALJ noted the VE testified these jobs have changed somewhat because computers are now ubiquitous but that the number of appropriate positions in the national economy would remain unchanged. *Id.* at 29. The ALJ then found Molek was not disabled. *Id.*

## IV. Standard of Review

Judicial review of a social security case is based upon the pleadings and the transcript of the record, and the scope of that review is limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact. *See* 42 U.S.C. § 405(g). If the Court finds substantial evidence

supports the final decision, it must uphold it. *See Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). The Court may not set aside a decision that is supported by substantial evidence "even if [it] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (citing § 405(g)).

"Substantial evidence" is defined as "more than a mere scintilla." *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999). It means "such relevant evidence as a reasonable mind might accept as adequate" to support a conclusion. *Id.*; *Biestek v. Berryhill*, 587 U.S. 97 (2019). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). An ALJ's findings must "be accompanied by a clear and satisfactory explication of the basis on which [they] rest[ ]." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). Decisions that are conclusory in their findings or indicate the ALJ's failure to consider all the evidence are not supported by substantial evidence. *See id.* at 705–06. Moreover, the Court must ensure the ALJ did not "reject evidence for no reason or for the wrong reason." *Id.* at 706 (citing *King v. Califano*, 615 F.2d 1018 (4th Cir. 1980)).

A district court, after reviewing the entire record may affirm, modify, or reverse the decision with or without remand to the Commissioner for rehearing. *Podedworny v. Harris*, 745 F.2d 210, 221 (3d Cir. 1984). Remand is appropriate if the record is incomplete or if the ALJ's findings are incomplete and failed to

"explicitly weigh all relevant, probative and available evidence" of record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (cleaned up).

To be eligible for Social Security benefits under the Act, a claimant must demonstrate that they cannot engage in "substantial gainful activity" because of a medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); *Brewster v. Heckler*, 786 F.2d 581, 583 (3d Cir. 1986).

As mentioned previously, when reviewing a claim the ALJ must utilize a five-step sequential analysis to evaluate whether a claimant has met the requirements for disability. 20 C.F.R. §§ 404.1520, 416.920. The ALJ must determine:

> (1) whether the claimant is currently engaged in substantial gainful activity;
>
> (2) if not, whether the claimant has a severe impairment or a combination of impairments that is severe;
>
> (3) whether the medical evidence of the claimant's impairment or combination of impairments meets or equals the criteria listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1;
>
> (4) whether the claimant's impairments prevent them from performing their past relevant work; and
>
> (5) if the claimant is incapable of performing their past relevant work, whether they can perform any other work which exists in the national economy.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see Barnhart v. Thomas*, 540 U.S. 20, 24–25 (2003). The claimant carries the initial burden of demonstrating by medical evidence that he or she is unable to return to his previous employment under steps

1 through 4. *Dobrowolsky v. Califano*, 606 F.2d 403, 406 (3d Cir. 1979). If the claimant meets their burden and shows he or she is unable to resume previous employment, the burden shifts to the Commissioner at step 5 to prove that, given claimant's mental or physical limitations, age, education, and work experience, he or she can perform alternative substantial gainful activity. *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986).

## V. Discussion

### a. Dr. Gastgeb's Medical Opinion

Molek first argues the ALJ committed legal error and her decision was not supported by substantial evidence because she failed to evaluate the medical findings and opinion of Dr. Gastgeb in accordance with 20 C.F.R. § 416.920c. ECF No. 17 at 20. Molek contends the ALJ did not consider her reported ability to adequately respond to changes in routine and having marked to extreme difficulties in interacting with others in reference to Dr. Gastgeb's psychological evaluation. *Id.* at 21.

The Commissioner responds that the ALJ did consider Dr. Gastgeb's medical findings and opinions when she credited Dr. Gastgeb's April 2018 testing which showed Molek to be "very intelligent" with good memory, improved social skills and decreased depressive symptoms, and that the ALJ was not required to consider Dr. Gastgeb's opinion because it was dated more than a year before Molek's September 2019 social security application date, Dr. Gastgeb's findings did not show any work-

preclusive limitations and the record is clear that Molek worked for more than a year after Dr. Gastgeb's evaluation. ECF No. 18 at 8.

The ALJ did not fail to properly evaluate Dr. Gastgeb's psychological evaluation. While Molek's argument is not fully developed, she seemingly argues that Dr. Gastgeb's evaluation should be treated as a medical opinion which the ALJ was required to evaluate in determining her RFC. *See* ECF No. at 20 (quoting 20 C.F.R. § 416.920(c) which refers to how an ALJ considers medical opinions). Medical opinions are statements "from a medical source about what [a claimant] can do despite [her] impairment(s) and whether [the claimant] ha[s] one or more impairment-related limitations or restrictions" related to her ability to perform the physical and mental demands of work activities, ability to perform other demands of work and ability to adapt to environmental conditions. 20 C.F.R. § 404.1513(a)(2)(i)-(iv). An ALJ must evaluate medical opinion evidence by articulating the following factors: supportability, consistency, relationship with the claimant, specialization and any other factors that tend to support or contradict a medical opinion. 20 C.F.R. § 416.920(c). Dr. Gastgeb's psychological evaluation simply does not constitute a medical opinion as it provides no opinion as to whether Molek has an impairment-related limitation or restriction in connection with her ability to perform any demands of work activities. *See Johnson v. Kijakazi*, No. CV 21-1919, 2023 WL 2500367, at *1, n. 1 (W.D. Pa. Mar. 14, 2023). Therefore, the ALJ was not required to articulate the above-mentioned factors under 20 C.F.R. § 416.920(c) as Molek contends. Rather, Dr. Gastgeb's evaluation is considered "other medical evidence"

which consists of evidence from a medical source about the nature and severity of the claimant's impairments, the claimant's medical history, clinical findings, diagnosis, treatment prescribed with response or prognosis and was properly considered by the ALJ. 20 C.F.R. § 404.1513(a)(3).

Moreover, the ALJ was not required to consider Dr. Gastgeb's evaluation as it was outside of the scope of Molek's applicable medical history. An ALJ is required to make "every reasonable effort" to develop a claimant's "complete medical history" before making a determination for benefits. 20 C.F.R. § 404.1512. "A social security claimant's 'complete medical history' includes medical records covering at least the 12 months preceding the month in which the application was filed." *Miller v. Comm'r of Soc. Sec.*, 719 F. App'x 130, 133 (3d Cir. 2017) (citing 20 C.F.R. § 416.912(b)(1)(ii)). An ALJ is "not obligated to consider medical records dating back that far where disability benefits would not be paid for that time." *Id.* The ALJ referred to Dr. Gastgeb's psychological evaluation when she considered Molek's full longitudinal record. *See* ECF No. 7-2 at 21, 26 (citing Dr. Gastgeb's psychological evaluation and noting "testing showed [Molek] to be very intelligent, with a full-scale IQ in the 99th percentile (Ex. 29F at 5)"; "a psychological evaluation performed in 2018 showed [Molek] to be very intelligent, with a good memory, improved social skills, and decreased depressive symptoms"). But, the ALJ was not obligated to consider the entirety of Dr. Gastgeb's psychological evaluation because it was completed more than a year before Molek's September 2019 application date. See ECF No. 7-15 at 479-489 (Dr. Gastgeb's psychological evaluation dated May 16,

2018). It was therefore not error for the ALJ to not consider the entirety of Dr. Gastgeb's psychological evaluation. The ALJ's finding that Molek only had moderate limitations in responding to changes is otherwise supported by substantial evidence as set forth below.

As for the ALJ's finding that Molek only had moderate limitations in interacting with others, this is likewise supported by substantial evidence. The ALJ considered Molek's own reports that she has a hard time interacting with people and struggles with severe social anxiety, but found she was able to perform music before her physical symptoms made it difficult to do so, she has a few supportive friends and she does not see them as much because Molek has continued to self-isolate because of her concerns about contracting COVID-19 while being immunocompromised and not because she has an inability to interact appropriately with others. ECF No. 7-2 at 21. The ALJ likewise considered several medical opinions on Molek's ability to interact with others, including the following:

- The ALJ found the opinion of Chantal Deines, Psy.D. that Molek would have moderate limitations interacting with others mostly persuasive because it was well-supported by a contemporaneous mental status examination and consistent with the longitudinal treatment records. ECF No. 7-2 at 27.
- The ALJ found the opinion of Sari Fleischman, Psy.D. that Molek would have mild to moderate problems interacting with others somewhat persuasive and consistent with Molek's self-reported symptoms. ECF No. 7-2 at 27.
- The ALJ found the opinion of Anne Rene Miller, Ph.D. that Molek would have moderate to marked difficulties interacting with others mostly persuasive because it was consistent with Molek's behavioral health records and supported by the results of her own mental status examination. ECF No. 7-2 at 27.

The ALJ accounted for this in the RFC by limiting Molek's work to frequent interaction with supervisors, occasional interaction with coworkers and no interaction with the public. ECF No. 7-2 at 23. Accordingly, the ALJ's decision in this regard was supported by substantial evidence and Molek's motion is denied in this respect.

**b. Molek's Ability to Adapt or Manage in the RFC**

Next, Molek argues the RFC adopted by the ALJ was not supported by substantial evidence because it failed to account for Molek's limited ability to work at a job requiring workplace changes. ECF No. 17 at 21.

When considering a medical opinion, an ALJ does not have to "defer or give any specific evidentiary weight, including controlling weight" to any one medical opinion, including a claimant's treating medical provider. 20 C.F.R. § 404.1520c(a). Instead, all medical opinions are evaluated for their persuasiveness based on five factors: supportability, consistency, relationship with the claimant, specialization and "other factors that tend to support or contradict" the medical opinion. 20 C.F.R. § 404.1520c(c)(1)-(5). The two "most important factors" in determining the persuasiveness of the medical opinions are consistency and supportability. 20 C.F.R. § 404.1520c(a); *Chung v. Comm'r Soc. Sec.*, No. 24-1974, 2025 WL 1065241, at *3 (3d Cir. Apr. 9, 2025).

While the ALJ must "articulate how [they] considered the medical opinions[,]" 20 C.F.R. § 404.1520c(a), the ALJ is not required to invoke any "magic words" in their decision. *Chung*, 2025 WL 1065241, at *3 (quoting *Zaborowski v.*

*Comm'r of Soc. Sec.*, 115 F.4th 637, 639 (3d Cir. 2024). So long as the ALJ "weave[s] supportability and consistency throughout [his] analysis of which doctors were persuasive[,]" the evaluation is sufficient. *Chung*, 2025 WL 1065241, at *3 (quoting *Zaborowski*, 115 F.4th at 639). The court reviews the ALJ's decision "as a whole" and the decision need only include "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004).

The ALJ adequately evaluated the supportability and consistency of the medical opinions in formulating Molek's RFC. Specifically, the ALJ found as follows:

- The opinion of Shelly Ross, Ph.D. that Molek would have moderate to marked functional limitations in adapting to changes in the work setting unpersuasive because the opinion grossly overstated the severity of Molek's mental limitations and was unsupported by the limited objective evidence available when the opinion was authored in January 2020. ECF No. 7-2 at 27.
- The opinion of Chantal Deines, Psy.D. that Molek would have moderate limitations responding appropriately to change mostly persuasive because it was well-supported by a contemporaneous mental status examination and consistent with the longitudinal treatment records. ECF No. 7-2 at 27.
- The opinion of Sari Fleischman, Psy.D. that Molek would have marked limitations responding to change somewhat persuasive because while it was consistent with Molek's self-reported symptoms, it was not fully supported by Dr. Fleischman's own consultative mental status examination which overstated Molek's difficulty responding appropriately to change. ECF No. 7-2 at 27.
- The opinion of Anne Rene Miller, Ph.D. that Molek would have moderate problems responding appropriately to change mostly persuasive because it was consistent with Molek's behavioral health records and supported by the results of her own mental status examination. ECF No. 7-2 at 27.

The ALJ adequately analyzed the supportability factor when she evaluated each medical opinion which requires the ALJ consider "the extent to which the medical source's opinion is supported by relevant objective medical evidence and explanations presented by the medical source." *Stark v. Dudek*, No. 2:24-CV-1464, 2025 WL 1736485, at *4 (W.D. Pa. June 23, 2025) (quoting *Cota v. Kijakazi*, No. 4:21-CV-672, 2022 WL 3686593, at *5 (M.D. Pa. Aug. 25, 2022)). See also 20 C.F.R. § 404.1520c(c)(1). "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)...the more persuasive the medical opinions ...will be." 20 C.F.R. § 404.1520c(c)(1). The ALJ considered whether each medical opinion was supported by relevant objective medical evidence, including whether the opinion was supported by a mental status examination or other longitudinal treatment records.

Likewise, the ALJ adequately analyzed the consistency factor when she evaluated each medical opinion. Consistency requires the ALJ to consider "the extent to which the medical source's opinion is consistent with the record as a whole." *Stark*, 2025 WL 1736485, at *4, n. 2 (citing *Cota*, 2022 WL 3686593, at *5; 20 C.F.R. § 404.1520c(c)(2)). "The more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s)...will be." 20 C.F.R. § 404.1520c(c)(2). The key difference between supportability and consistency is that "supportability considers the evidence and explanations 'presented b[y] a medical source' whereas consistency looks at 'evidence from other medical sources and nonmedical sources in

the claim.'" *Gongon v. Kijakazi*, 676 F. Supp. 3d 383, 397 (E.D. Pa. 2023) (citing 20 C.F.R. § 404.1520c(c)(1)-(2)). The ALJ properly considered whether each medical opinion was consistent with Molek's medical record as a whole.

The Court finds no error with the ALJ's analysis of the medical opinion and substantial evidence supported the ALJ's evaluation in finding that Molek had moderate limitations in her ability to manage changes in the workplace. The ALJ further accounted for this limitation in the RFC by limiting her to simple, routine, repetitive tasks, not working at a production rate pace and only making simple work-related decisions. ECF No. 7-2 at 23. Accordingly, Molek's motion is denied in this respect.

**c. Exertional Limitations in the RFC**

Finally, Molek argues the ALJ erred because the RFC did not properly account for her limitations in standing, walking, hypotension, tachycardia, and PCOS. ECF No. 17 at 23.

Fundamentally, an RFC is "the most [a claimant] can still do despite [the claimant's] limitations" and is based on all relevant evidence of record. 20 C.F.R. § 416.945(a)(1). Relevant evidence includes "medical records, observations made during formal medical examinations, descriptions of limitations by the claimant and others, and observations of the claimant's limitations by others." *Fargnoli v. Massanari*, 247 F.3d 34, 41 (3d Cir. 2001). While the ALJ must consider relevant evidence in formulating the RFC, she need only include limitations which are

credibly established. *Garrett v. Comm'r of Soc. Sec.*, 274 F. App'x 159, 163 (3d Cir. 2008).

In addition to considering medical opinion evidence, an ALJ must give "serious consideration to a claimant's subjective complaints" of her symptoms, "even where those complaints are not supported by objective evidence." *Mason v. Shalala*, 994 F.2d 1058, 1067 (3d Cir. 1993) (cleaned up). But "subjective complaints alone are not sufficient to establish a claimant's disability." *Campbell v. O'Malley*, No. 21-CV-4166, 2024 WL 1288643, at *9 (E.D. Pa. Mar. 26, 2024) (citing 20 C.F.R. §§ 404.1529(a); 416.929(a)). In assessing the credibility of a claimant's subjective complaints compared with the objective medical evidence, the "ALJ may partially or entirely reject complaints that are inconsistent with the evidence." *Id.* When a claimant's daily activities are inconsistent with subjective symptoms, the ALJ may "conclude that some or all of the claimant's testimony about her limitations or symptoms is less than fully credible." *Burns v. Barnhart*, 312 F.3d 113, 129–30 (3d Cir. 2002). An ALJ's decision about a claimant's subjective symptoms will be upheld so long as it is supported by substantial evidence. *Biestek*, 587 U.S. 97.

In formulating her RFC, the ALJ summarized Molek's own statements regarding her physical symptoms including, inter alia, limitations in standing, walking, hypotension, tachycardia, and PCOS. *See* ECF No. 7-2 at 19; 24-25 (treatment records in July 2019 indicated trouble standing and walking; treatment records indicated symptoms may be attributed to hypotension and tachycardia;

treatment records indicated nausea and significant menstrual cramps secondary to PCOS did not require functional limitations because it was an intermittent issue).

The ALJ also considered Molek's longitudinal medical history and treatment records. *Id.* at 23–26. The ALJ also considered several medical opinions in formulating the RFC including finding that

- Arcadio Agudelo-Hernandez-MD, and Mary Ellen Wyszomierski, MD's opinion that Molek would be limited to light exertion with modest postural, manipulative and environmental restrictions as well-supported by the objective medical evidence showing that Molek's physical symptoms have remained generally stable with medication throughout the period at issue. ECF No. 7-2 at 26.

- Alexandra Smith-Demain, M.D.'s opinion that Molek would be capable of light lifting and carrying, albeit with decreased standing and walking and additional manipulative, postural, and environmental restrictions only somewhat persuasive because it was not consistent with the longitudinal treatment records and not fully supported by a contemporaneous physical examination and overstated Molek's difficulties in standing and walking. *Id.* at 27.

The ALJ explained that based on the evidence, Molek's physical abilities required limitations and formulated her RFC accounting for those limitations. *Id.* at 22–27. The ALJ found:

> The undersigned limited the claimant to light exertion with modest postural restrictions because of her chronic pain and fatigue. The undersigned also limited the need to use her hands because of persistent joint stiffness. The undersigned limited exposure to workplace hazards because of the dizziness associated with the claimant's hypotension, and limited exposure to symptom triggers such as extreme temperatures and loud noises.

ECF No. 7-2 at 24. The ALJ formulated these limitations into Molek's RFC by limiting her to only frequent use of hand controls, and bilateral handling and fingering, occasionally climbing ramps and stairs but never ladders, ropes or

scaffolds, frequently stoop but only occasionally balance, kneel or crouch, never crawl, never work at unprotected heights or around dangerous machinery, never operate a motor vehicle, no exposure to extreme temperatures, and no more than a moderate noise level. *Id.* at 22–23.

Considering the ALJ's decision as a whole, she sufficiently evaluated the persuasiveness of each medical opinion, compared them to evidence of record, considered Molek's own statements and her medical treatment record and imposed physical limitations in the RFC and sufficiently explained her decision to impose or not impose certain limitations as established by the evidence. The Court therefore finds no error with the ALJ's analysis in formulating the RFC for Molek's physical limitations and substantial evidence supported the ALJ's decision. Accordingly, Molek's motion is denied in this respect.

## VI. Conclusion

Based on the above, the final decision of the Commissioner denying Molek's claim is AFFIRMED. Molek's motion for summary judgment is DENIED. An appropriate Order follows.

DATED this 30th day of September, 2026.

BY THE COURT:

s/Christopher B. Brown
United States Magistrate Judge